# MARVEL *v.* DECKER.

PATENTS; INTERFERENCES; DUE DILIGENCE.

1. Where one party to an interference is the first to conceive the invention, but the other is the first to reduce to practice, both actually and constructively, the latter is entitled to an award of priority, unless the former shows he was in the exercise of due diligence at the time of the appearance of his rival in the field of invention; *following* Porter v. Louden, 7 App. D. C. 64; Yates v. Husen, 8 Id. 93, and Croskey v. Atterbury, 9 Id. 207.

2. Such due diligence is not shown by an applicant, where for nine years he does nothing except make some additional drawings and talk about the invention occasionally and urge one or two persons to "take it up," especially where it appears that during that time he has taken out two patents on the same general subject; *following* Fowler v. Dodge, 11 App. D. C. 592.

No. 104. Patent Appeals. Submitted November 18, 1898. Decided December 9, 1898.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. L. S. Bacon* for the appellant.

*Mr. Frederick L. Emery* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

The invention for which this interference proceeding in the Patent Office has been instituted, is described in the record of the case as follows:

"The combination with the pivoted gravity-buckets and chain connections in an endless conveyer, of shields covering the spaces between the buckets, and supports for connecting the shields with the chains of the endless conveyer."

There were originally three claimants of the invention,

and consequently three parties to the interference; but one of these, Theodore O. Terhune, did not appeal from the decision of the examiner of interferences against him, and has therefore dropped out of the case. Of the other two contestants, the appellant, Theodore L. Marvel, claims to have conceived the invention in October of 1886; to have made sketches of it and explained the invention to others about the same time; to have made a model of it in September of 1887; to have talked of it to others from time to time and especially in 1891; and to have made and exhibited other drawings of the invention on November 6, 1893; but he admits that at the time of making his preliminary statement (August 5, 1896), he had not put the invention into actual use or embodied it in a full-sized machine. His application to the Patent Office was on May 22, 1896.

The appellee, Edwin S. Decker, who filed his application in the Patent Office on July 25, 1895, and who is therefore the senior applicant, claims to have conceived the invention on or about February 1, 1895; to have then made a sketch of it; on the following day to have disclosed his invention and sketch to others; within one week thereafter to have made full working drawings illustrative of the invention, which he says he promptly communicated to others; on March 9, 1895, to have commenced a full-sized operative device embodying the invention, which he completed and successfully operated within one week thereafter; and on April 25, 1895, to have completed other apparatus embodying his conception, since which time, as he alleges, two systems of conveyers involving the use of the invention have been in successful commercial operation.

According to these several statements, therefore, which are not inconsistent with each other, and which may be regarded as substantially supported and proved by the testimony in the case, the appellant Marvel was the first to conceive, and the appellee Decker, although the second to conceive, was the first to reduce to practice, as well construc-

tively by being the first to file his petition for a.patent, as actually by constructing the apparatus and putting it into successful operation.    Thereupon all three of the tribunals of the Patent Office awarded priority of invention to the appellee Decker, as being the first to reduce his conception to practice; and this conclusion is undoubtedly in accordance with law, unless it is satisfactorily made to appear that the appellant was in the exercise of due diligence at the time of the appearance of his rival in the field of invention. *Croskey* v. *Atterbury,* 9 App. D. C. 207; *Yates* v. *Huson,* 8 App. D. C. 93; *Porter* v. *Louden,* 7 App. D. C. 64.    Consequently, the substantial question in controversy between the parties is that of the due diligence of the appellant.    How then does the appellant account for his delay of upward of nine years from the date of his invention in October of 1886 until he came into the Patent Office in May of 1896? And what does he show to have been done by him during that period in the prosecution of his invention?

The testimony on this point is very fully and fairly analyzed by the examiner of interferences in the very able opinion which he has filed in the case, as also by the opinions rendered by the Board of Examiners-in-Chief and the acting Commissioner of Patents; and it would serve no useful purpose if we should go over the same ground again.    Suffice it to say that during the nine years between 1887 and 1896, except the making of some additional drawings in 1893, the appellant did nothing whatever in the prosecution of his invention further than to talk about it occasionally, and to urge one or two persons to " take it up"— whatever be meant by that phrase.    He seems to have taken out two other patents in 1888 and 1890 or 1891, on the same general subject; and no sufficient or satisfactory reason is shown why he might not also have filed an application for this present invention.    The only excuse that seems to be given for this inaction is that the time did not seem to be propitious for making profit out of the invention.

But plainly this excuse will not suffice. We had the same excuse and substantially the same situation in the case of *Fowler* v. *Dodge*, 11 App. D. C. 592; and we held that the person unduly delaying his application for a patent, and who contented himself with solicitations addressed to other persons to take up his invention, was not in the use of due diligence, and was not entitled to take precedence of another whose conception was later in point of time, but who had been prompt to file his application for a patent. That case is directly in point, and must govern our decision here.

It follows that we must *affirm the decision of the Commissioner of Patents, which we accordingly do.*

*The clerk of the court will certify this opinion and the proceedings had in the cause before us to the Commissioner of Patents, according to law.*